UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MICHAEL RAY ROBINSON, | )<br>) |
| Plaintiff, | ) Case No. 1:09-cv-143<br>) |
| v. | ) Honorable Paul L. Maloney<br>) |
| WHEELING & LAKE ERIE<br>RAILWAY CO., et al., | )<br>) **MEMORANDUM OPINION**<br>) |
| Defendants. | )<br>) |

This is a civil action brought by a *pro se* plaintiff against his former employers. Plaintiff's first complaint was a four-page, handwritten document that failed to identify with any clarity the claims raised or the parties named as defendants. By opinion and order entered April 15, 2009, Chief Judge Paul Maloney construed the complaint as naming only Wheeling & Lake Erie Railway Co. The court dismissed several state-law claims asserted against that defendant, leaving pending only the claims set forth in paragraph 6 of the original complaint, which alleges that the Railway terminated "plaintiff's employment for plaintiff's cooperation in the federal railway investigation of noncompliance against the defendant's improper, unsafe operations and practice." (Compl. ¶ 6, docket # 1). Judge Maloney construed this as a federal-question claim and directed service of process upon the Railway. The Railway filed an answer to the complaint on March 28, 2009, raising a number of affirmative defenses, including improper venue.

Shortly thereafter, the Railway filed a motion to transfer venue to the Northern District of Ohio, pursuant to 28 U.S.C. § 1406(a). (docket # 30). Defendant's motion asserts that

venue is improper in this district under 28 U.S.C. § 1391(b), because defendant does not reside in this district and a substantial part of the events or omissions giving rise to the claim did not occur here. In support of its motion, the Railway submitted the affidavit of Jim Hill, Division Superintendent of the Wheeling & Lake Erie Railway Co., which sets forth the lack of contacts between defendant and the State of Michigan. Plaintiff responded to the motion, and Chief Judge Maloney has referred the motion to me for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

During the pendency of the Railway's motion to transfer venue, plaintiff sought leave to file a first amended complaint. Plaintiff's motion acknowledged that his first *pro se* complaint was unclear and informed the court that plaintiff had meant to name a second defendant (Railway Signal Systems, LLC), whose name was reflected in the caption but nowhere else in the body of the complaint. The court granted plaintiff leave to file a first amended complaint to clarify both the nature of his claims and the parties that he intended to sue.

Pursuant to the court's grant of leave, plaintiff has filed a first amended complaint. (docket # 38). The amended complaint consists of eight typewritten pages, written in a detailed, lawyer-like fashion. The amended complaint is obviously addressed to the venue issue, as plaintiff now specifically alleges the basis for venue in paragraph 4. I have analyzed the venue issue in light of the allegations of plaintiff's amended complaint and find that venue is clearly improper in this district. The Railway's motion to transfer will therefore be granted.

**Findings of Fact**

The facts necessary for a resolution of the motion to transfer are found in the affidavit of Jim Hill. Although plaintiff has not submitted an affidavit controverting the Hill affidavit, the

court will accept as true the factual allegations in the amended complaint, to the extent that they bear on the issue of venue.

Plaintiff is an individual residing in Lansing, Michigan. At the times relevant to his claims, he resided in Holt, Michigan. (Am. Compl. ¶ 5, docket # 38). Defendant Wheeling & Lake Erie Railway Co. (the Railway) is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Ohio. (Am. Compl. ¶ 6). The Railway has never been incorporated in the State of Michigan. (Hill Aff., ¶ 3, docket # 30, Ex. A). Furthermore, the Railway has never been licensed or authorized to do business in this state and has never obtained a certificate to transact business here. (*Id.*, ¶ 4). The Railway does not have any tracks, employees, offices, facilities, or operations in this state, nor does it lease or operate any real or personal property here. (*Id.*, ¶¶ 5-7). Plaintiff has not submitted any factual material controverting any of these assertions, nor does his amended complaint address the contacts between the Railway and the State of Michigan.

Defendant Rail Signal Systems, LLC (RSS) is a Texas limited liability company. Plaintiff alleges that from September 9, 2003, until February 15, 2006, RSS was registered to do business in the State of Michigan and had designated an agent for service of process in this state. (Am. Compl. ¶ 7). RSS has not yet been served with process in this case.

The defendant Railway is a railroad common carrier operating pursuant to a certificate of public convenience and necessity granted by the U.S. Surface Transportation Board under the authority of the Interstate Commerce Act. (Am. Compl. ¶ 10). In 1999, the Railway obtained track rights to operate its trains over fifty-six miles of tracks between Bellevue and Toledo, Ohio. (*Id.* ¶ 11). The Railway also purchased a single-track railroad bridge known as the Maumee Toledo Pivot

Bridge, which spans the Maumee River in the City of Toledo, Ohio. (*Id.* ¶¶ 12, 14, 16). The Maumee Bridge is operated from a building situated atop the movable, or "swing," span of the bridge. (*Id.* ¶¶ 14-15). Plaintiff alleges on information and belief that the Railway assumed direct responsibility for operating the Maumee Bridge on or about May 29, 2005.

Shortly after the Railway became responsible for the operation of the Maumee Bridge, it engaged defendant RSS to maintain, inspect, and operate the bridge under contract. (Am. Compl. ¶ 20). On September 1, 2005, RSS employed plaintiff as an operator-bridge tender at the Maumee site. (*Id.* ¶ 22). Under the terms of employment between plaintiff and defendant RSS, plaintiff was employed as an "on-call" operator-bridge tender and was to receive a telephone call from the chief dispatcher in Brewster, Ohio, at least four hours before plaintiff was to report to work at the Maumee Bridge. This advance notice would allow plaintiff time to drive from his home (then in Holt, Michigan) to Toledo, Ohio, to assume his responsibilities. (*Id.* ¶ 23).

Plaintiff alleges that he repeatedly informed both the Railway and RSS that the minimum safety requirements for the operation of the bridge were not being met and that he pointed out such things as lack of adequate maintenance and malfunctions of the locking device. He asserts that his concerns were ignored. (Am. Compl. ¶¶ 27-28). He alleges that in late October 2005, the U.S. Coast Guard conducted an unannounced inspection of the Maumee Bridge and issued specific directions to plaintiff regarding operation of the bridge. He further asserts that in November of the same year, he contacted the local office of the Federal Railroad Administration seeking guidance with respect to measures needed to bring the bridge into compliance with that agency's operating requirements. (*Id.* ¶ 30).

On December 2, 2005, plaintiff received a letter from an employee of RSS, giving him notice that his employment would be terminated on December 22, 2005. On or around December 20, 2005, plaintiff was advised by the Director of Human Relations for the Railway that on December 23rd he would be employed by the Railway, but paid by RSS. (*Id.* ¶ 32). This arrangement continued through early June 2006, when defendants allegedly demanded plaintiff's resignation. (*Id.* ¶ 35). Plaintiff alleges that he was forced to resign under duress, in retaliation for his reports to federal agencies concerning safety problems at the Maumee Bridge. (Count 1). Plaintiff also alleges that defendants colluded to deprive him of his statutory appeal rights. (Count 2).

Plaintiff does not allege that he performed any work for either defendant in the State of Michigan. Rather, all acts and omissions alleged in the complaint took place in the State of Ohio, and plaintiff's termination from employment occurred there.

## Discussion

### 1.

Venue for civil actions brought in the United States District Courts is governed by statute, 28 U.S.C. § 1391. Subsection (a) governs venue in cases where jurisdiction is founded only on diversity of citizenship. Subsection (b) governs federal-question cases. In light of the amended complaint, it is now obvious that the parties are of diverse citizenship, but this does not affect the venue question, as plaintiff has purported to assert a federal claim for wrongful discharge. Therefore, section 1391(b) governs.

Venue under section 1391(b) is proper only in (1) a judicial district where any defendant resides, "if all defendants reside in the same State," (2) a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred," or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. Section 1391(c) goes on to define a corporation's residence extremely broadly. Under subsection (c), a corporation is deemed "to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Therefore, venue over a corporate defendant is not limited to the district in which the defendant is incorporated or has its principal place of business. Rather, a corporate defendant may be sued in any district in which *in personam* jurisdiction over the corporation exists. "[A] corporation resides for venue purposes in every district in which it is subject to personal jurisdiction. Thus, a corporation can have many residences." 14D, CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3811.1 at 345 (3d ed. 2007).

A federal district court has personal jurisdiction over a defendant in a federal-question case if the defendant is amenable to service under the law of the forum state and if exercise of personal jurisdiction would not offend due process. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such "minimum contacts" with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant's conduct and connection with the forum state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

**2.**

Personal jurisdiction over corporations is governed by Michigan's Revised Judicature Act, MICH. COMP. LAWS §§ 600.711, .715. The Act distinguishes between general jurisdiction and limited personal jurisdiction. This comports with the general scheme of state laws governing personal jurisdiction in this country:

> In a case of general jurisdiction, a defendant's contacts with the forum state are of such a "continuous and systematic" nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *See, e.g., Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 1872 n.8, 80 L.Ed.2d 404 (1984).

*Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). A court may exercise jurisdiction if the contacts between the defendant corporation and the forum state fall either within general or limited jurisdiction as defined by state statute.

Michigan courts may assert general jurisdiction over a corporation if it (1) is incorporated in this state, (2) has consented to state jurisdiction, or (3) carries on a "continuous and systematic part of its general business within the state." MICH. COMP. LAWS § 600.711. With regard to defendant RSS, plaintiff alleges that RSS has an agent for service of process in the State of Michigan. (Am. Compl. ¶ 7).[1] Maintenance of an agent for service of process in a state has always been recognized as consent by the corporation to the jurisdiction of that state's courts. *See*

---

[1] Review of the publicly available records of the Michigan Department of Energy, Labor and Economic Growth confirms that RSS, a Texas LLC, was granted a certificate of authority to do business in Michigan on September 11, 2003. On June 26, 2004, its designated agent for service of process resigned. Thereafter, the Department's Corporation Division became RSS's agent for service of process by operation of law. MICH. COMP. LAWS § 450.4207(4).

*Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 443 (1946). *Ytuarte v. Gruner & Jahr Printing & Pub. Co.*, 935 F.2d 971, 973 (8th Cir. 1991). Therefore, venue would be proper in this District, if RSS were the only defendant, as RSS is a resident of Michigan.

The venue statute, however, requires that both parties reside in the same state. 28 U.S.C. § 1391(b). The defendant Railway clearly has insufficient contacts to satisfy the test for general jurisdiction. Defendant is not incorporated in this state, nor is there any evidence that it has appointed an agent for service of process or otherwise has consented to jurisdiction here. The requirement that a corporation carry on a "continuous and systematic part" of its general business within the state requires substantial business contacts. *See, e.g., Renfroe v. Nichols Wire & Alum. Co.*, 83 N.W.2d 590, 593-94 (Mich. 1957). Furthermore, in order to satisfy the "doing business" requirement of general jurisdiction, a defendant must be engaged in substantial, continuous, and systematic contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984). Plaintiff has not established that defendant had any regular, substantial and systematic contacts with the state to sufficient to create general jurisdiction.

Michigan's long-arm statute establishes specific jurisdiction against corporations arising out of the act or acts which create any of the following relationships:

> (1) The transaction of any business within the state,
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contacting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS § 600.715. As the plaintiff, Mr. Robinson has the burden of establishing the district court's long-arm jurisdiction over defendant. *Neogencorp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). When the issue is presented to the court on the basis of affidavits, a plaintiff need only make a "*prima facie* showing of jurisdiction." *Id.* Plaintiff can meet this burden by establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction. *Id.* Even construing the facts of record in a light most favorable to plaintiff and accepting all facts alleged in the amended complaint as true, the court concludes that plaintiff has not established any of the statutory grounds for long-arm jurisdiction.

Certain of the subsections of the long-arm statute may be eliminated summarily. This case has nothing to do with the ownership, use or possession of tangible or real personal property situated in Michigan (subsection 3), nor does it involve a contract of insurance for property or other risks located in this state (subsection 4). Furthermore, plaintiff does not allege that defendant entered into a contract for services to be performed in this state (subsection 5). To the contrary, *plaintiff* contracted to perform services in the State of Ohio.

The only possible remaining subsections are (1) and (2). Subsection (1) allows the exercise of jurisdiction for claims arising out of the transaction of any business within the state. The "slightest act of business in Michigan" will suffice for purposes of section 600.715(1). *See Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971)). The claim, however, must "arise from" the defendant's conduct of business in the state. *See Neogencorp*, 282 F.3d at 888. In this case, the only "business" identified by plaintiff relating to Michigan is defendant's placing of phone calls to Michigan to summon plaintiff to come to work. (Am. Compl. ¶ 23). The courts have held that such insignificant contacts

are insufficient to invoke personal jurisdiction. In *Pennebacker v. Wayfarer Ketch Corp.*, 777 F. Supp. 1217 (E.D. Pa. 1991), a wrongful termination case, the court considered and rejected the identical argument. Plaintiff was a resident of Pennsylvania who worked in the State of New York. Defendant had no presence in New York, but was nevertheless sued in that forum for wrongful discharge. Plaintiff argued that the Pennsylvania long-arm statute authorized *in personam* jurisdiction against defendant because defendant had placed telephone calls to plaintiff in the forum state. The court held, however, that defendant's conduct "in hiring and firing plaintiff by placing telephone calls into Pennsylvania" did not meet the standard for *in personam* jurisdiction. 777 F. Supp. at 1221. "Finally, plaintiff's decision to live in Pennsylvania while employed by defendant and receive some of his paychecks at his home address in Pennsylvania are essentially unilateral decisions on his part for his own convenience which cannot provide a basis of jurisdiction." *Id.*

The only other statutory basis for jurisdiction is the assertion that the defendant Railway caused consequences to occur in the State of Michigan resulting in an action for tort. MICH. COMP. LAWS § 600.715(2). Again, cases involving a plaintiff who chooses to take a job in another state hold that the employer does not thereby subject itself to suit in the state of the employee's residence, in the absence of other substantial contacts with that state. *See, e.g., Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990). The *Mareno* case is directly on point. That case involved a fact pattern common on the East Coast, where many people live in one state but are employed in a neighboring state. The plaintiff in the *Mareno* case lived in New York and worked in New Jersey. He brought suit in New York for wrongful discharge. The Second Circuit found that the employer lacked continuous and systematic contacts with the state, so as to be "doing business" in New York. 910 F.2d at 1046. Plaintiff argued, however, that the court could exercise jurisdiction under the New

York long-arm statute because defendant "committed a tortious act without the state causing injury to person or property within the state." *Id.* Plaintiff argued that he had suffered financial loss in New York, even though the discharge took place in New Jersey. The Second Circuit rejected this argument. "An injury, however, does not occur within the state simply because the plaintiff is a resident. '[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.'" *Id.* (quoting *Carte v. Parkoff*, 543 N.Y.S.2d 718, 719 (N.Y. App. Div. 1989)). "Thus, despite the fact that Mareno may suffer the economic consequences of his firing in New York, the location of the original event which caused the injury is New Jersey." 910 F.2d at 1046. The same principle applies in the present case. Plaintiff was employed in Toledo, and that is where his discharge occurred. The fact that he chose to live in the State of Michigan is a unilateral act that cannot form the basis for jurisdiction. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Ultimately, exercise of specific personal jurisdiction over an out-of-state defendant is allowable only where the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. To be sure, plaintiff purposely availed himself of the privilege of working in the State of Ohio. It is much more difficult to say that defendant purposely availed itself of the privilege of doing anything in the State of Michigan or invoked any benefit or protection of Michigan law, merely by allowing plaintiff to come to work in Toledo. In these circumstances, exercise of personal jurisdiction over the defendant Railway is unwarranted.

**3.**

Venue does not lie in the Western District of Michigan, under any of the three alternative tests of 28 U.S.C. § 1391(b). Venue does not exist under subsection (1), because *both* defendants do not reside in this state, even under the extremely broad definition of that concept in section 1391(c). Venue does not lie under section 1391(b)(2), because plaintiff has not come forward with any facts showing that "a substantial part of the events or omissions giving rise to the claim" occurred in the State of Michigan. Indeed, it appears that all events, whether substantial or not, leading up to the claim took place in Ohio. Finally, subsection (3) is inapplicable, because there is a district in which the action may otherwise be brought, namely, the Northern District of Ohio.

**4.**

Plaintiff's amended complaint attempts to lay venue in this district on the basis of the following allegations:

> 4. Venue is proper in this court under the provisions of 28 U.S.C. § 1391(b) because Plaintiff's claims against each defendant arise from events or actions which either *i*) occurred while the Plaintiff was a resident of the state of Michigan, *ii*) occurred while Defendant RSS was a resident of the state of Michigan, *iii.*) Defendant Wheeling was acting as an agent for a resident of the state of Michigan, or *vi*) arose from events and/or actions which had their origin with a resident of the state of Michigan.

(Am. Compl. ¶ 4). Plaintiff's theories of venue are patently flawed. The fact that the events narrated in the complaint occurred "while Plaintiff was a resident of Michigan" is irrelevant. "Plaintiff's venue" (venue based on the plaintiff's residence) was eliminated from the venue statute in 1990. The fact that defendant RSS resides in the State of Michigan is necessary, but not sufficient, to lay venue here, because all defendants must reside in the state under the express terms of section

1391(b)(1). The Railway's alleged acting as agent for RSS, a Michigan resident, is insufficient, precisely because all of the Railway's alleged acts and omissions as agent took place in Ohio, not Michigan. Finally, the allegation that the events of the complaint "had their origins with a resident of the state of Michigan" is just a repackaged allegation of plaintiff's venue.

Plaintiff has brought eight cases in this court, most of which have been found to be frivolous. He has attempted to sue the State of Maryland, the State of Michigan, the Ingham County Circuit Court, the Governor of the State of Maryland, and other parties clearly immune from suit or outside the jurisdiction of this court. The present case appears to be another example of plaintiff's attempted overreaching.

For the foregoing reasons, defendant's motion to transfer venue will be granted and the matter will be transferred to the only court in which venue is appropriate, the United States District Court for the Northern District of Ohio at Toledo.


Dated: September 28, 2009           /s/ Joseph G. Scoville
                                    United States Magistrate Judge